# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Calvin I. Hill,

      Plaintiff,

v.

Ray Mabus, Secretary of the Navy,
and W. Dean Pfeiffer, Executive Director
Board for Correction of Naval Records,

      Defendants.

**Civil No. 12-cv-450 (DWF/SER)**

<u>**REPORT AND
RECOMMENDATION**</u>

---

Calvin I. Hill, *Pro Se*, 1879 Cottage Ave., St. Paul, Minnesota 55119.

Lonnie F. Bryan, Esq., United States Attorney's Office, 300 South Fourth Street Suite 600, Minneapolis, Minnesota 55415, for Defendants.

---

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Defendants' (the "Secretary")[1] Motion for Summary Judgment [Doc. No. 36] and Plaintiff Calvin I. Hill's ("Hill") Motion to Allow Lawsuit to Proceed and Defendant's Motion Be Denied, ("Mot. to Proceed") [Doc. No. 39]. This matter has been referred for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), (B), and (C), and District of Minnesota Local Rule 72.1. (Order of Reference Dated Aug. 16, 2012) [Doc. No. 16]. For the reasons stated below, the Court recommends granting the Secretary's Motion for Summary Judgment and denying Hill's Motion to Proceed.

---

[1] For convenience, both Defendant Secretary of the Navy Ray Mabus and Defendant W. Dean Pfeiffer will be referred to as the "Secretary" throughout this Report and Recommendation unless otherwise noted.

# I.   BACKGROUND[2]

Hill, a Minnesota resident, is a United States Navy veteran from the Vietnam era.  *See* (Compl.) [Doc. No. 1 at 1]; (Admin. R. at 300–03, 306).  [Doc. No. 13].[3]  He enlisted in May 1970, and served honorably as a Photographer's Mate Third Class (PH3).  (Admin. R. at 300). During his enlistment, Hill deployed to the Republic of Vietnam where he served in a Navy public affairs office.  (*Id*. at 300–03, 306).  Hill contracted tuberculosis while on active duty, and was temporarily found unfit for duty.  (*Id*. at 50–53).  After approximately two years of military medical treatment, Hill received an Honorable Discharge.  (*Id*. at 45–46, 150–51, 192–93, 300–01).  In 1989, Hill petitioned the Board for Correction of Naval Records (BCNR) to change his Honorable Discharge to a permanent medical retirement.  (*Id*. at 191–298).  Here, Hill seeks review of the BCNR's denial of his 2010 request for reconsideration, which sought alteration of his discharge papers.

## A.   Hill's Naval Service and Tuberculosis Diagnosis

In 1972, Hill contracted tuberculosis while assigned to the USS ENTERPRISE (CVN 65).  (*Id*. at 50–51, 315–17).  During an October 1972 port call at the U.S. Naval Base in Subic Bay, Philippines, Hill began complaining of sore throat, chills, and night sweats.  (*Id*. at 73).  He lost approximately thirteen pounds and ran a high fever.  (*Id*.).  Contemporaneously, there was a streptococcus outbreak aboard the ENTERPRISE, and medical providers believed Hill may have

---

[2]     This factual summary was originally prepared by the Court for the Court's Report and Recommendation on the Secretary's Motion to Dismiss.  *See* (Report and Recommendation Dated Dec. 3, 2012) [Doc. No. 28 at 1–11].  Because none of the underlying facts have changed, the Court provides the same factual summary here adds additional facts and details where necessary for disposition of the pending Motions.

[3]     The Administrative Record in this case is found in Docket Number 13, Exhibits to Defendants' Memorandum in Support of Motion for Summary Judgment.  That docket entry consists of six separate exhibits.  Exhibits 3, 4, 5, and 6 form the Administrative Record and are numbered sequentially.  For clarity, this Report and Recommendation uses that numbering system.

been suffering from that illness. (*Id.*). He failed to respond to treatment, however, and doctors eventually began to suspect tuberculosis. (Hill's 2010 Request for Reconsideration, Ex. B. Attached to Compl.) [Doc. No. 1-1 at 4].[4] In December 1972, the Navy transferred Hill to the Naval Hospital at St. Albans, Queens, New York, for treatment. (Admin. R. at 315). There, Hill underwent chemotherapy and the infected portion of his lungs was removed surgically. (*Id*. at 54–56).

When a servicemember such as Hill is seriously injured or becomes very ill, the United States military employs a standard process to evaluate whether he or she is fit for military duties, or must be separated from the service for medical reasons. 10 U.S.C. § 1201(a), (c).[5] This process is common across the military departments, and is known as the Medical Evaluation Board/Physical Evaluation Board ("MEB/PEB") process. Dept. of Defense Directive 1332.18, Separation or Retirement for Physical Disability (Nov. 4, 1996, certified as current Dec. 1, 2003). The first step is the Medical Evaluation Board ("MEB"), during which a group of physicians is "convened . . . to identify [servicemembers] whose physical and/or mental qualification to continue on full duty is in doubt . . . ." Sec'y of Navy Instruction 1850.4E, Dep't of Navy Disability Evaluation Manual, ¶ 2043 (Apr. 30, 2002).[6] The MEB evaluates and reports on "diagnosis; prognosis for return to regular duty; plan for further treatment; rehabilitation; or convalescence; estimate[s] the length of further disability; and [makes] medical recommendations for disposition of such [servicemembers]." *Id.*

---

[4]    Hill labeled his exhibits within the attachment to his Complaint, however, for ease of reference, the CM/ECF pagination is used.

[5]    Each branch of the military promulgates its own regulations and policies based on 10 U.S.C. § 1201. This Report and Recommendation will refer to the naval regulations applicable to the Medical Evaluation Board/Physical Evaluation Board ("MEB/PEB") process.

[6]    Secretary of Navy Instruction 1850.4E, Department of Navy Disability Evaluation Manual is available at http://www.public.navy.mil/asnmra/corb/PEB/Documents/References/ SECNAV%20INST%201850_4e.pdf.

If the MEB finds the servicemember fit for duty, he or she is returned to normal military duties. *Id.* at ¶ 3701. If not, the servicemember's file is forwarded to a Physical Evaluation Board (PEB), which reviews medical records and performs a disability evaluation. *Id.* ¶¶ 4201, 4209. The PEB has several options, including permanent medical retirement, separation from the military, placement on the Temporary Disability Retirement List (TDRL), or returning the servicemember to duty. *Id.* ¶¶ 3701, 3702, 3705, 3706.

In the spring of 1973, an MEB was convened to review Hill's medical conditions. (Admin. R. at 192). The MEB diagnosed Hill with active pulmonary tuberculosis with pleural effusion and recommended that Hill's file be referred to the PEB for final disposition. (Hill's 2010 Request for Reconsideration at 5). Hill acknowledged the MEB's recommendation in writing and affirmed that he did not wish to submit any rebuttal. (Admin. R. at 11). On June 26, 1973, the Navy's Central Physical Evaluation Board (CPEB) found that Hill was unfit for Naval service because of his pulmonary tuberculosis, and granted him a 100% disability rating. (*Id.* at 192). The CPEB informed Hill of these findings in accordance with PEB regulations, and he concurred with them. (*Id.*). The CPEB elected to place Hill on the TDRL, instead of separating him from the Navy or retiring him. (*Id.* at 192, 322). According to Navy regulations in effect at the time, the TDRL was defined as a:

> "[P]ending list" for all members who, through due process of medical procedures, have been found unfit to perform the duties of their office, grade, rank, or rating and who, according to accepted medical principles, may be permanently disabled. In this sense, the list provides a safeguard in the best interests of the Government against permanently retiring a member who may subsequently fully recover . . .

("Temporary Disability Retired List," Bureau of Naval Pers. Manual, "Pers. Manual," 3860400 ¶ 1) [Doc. No. 13, Ex. 1 at 7].[7]

Hill remained in this status for approximately two years, reporting for periodic physical examinations as required by Navy regulations. (*Id.* at 7–8 ¶ 3); (Admin. R. at 45–46). In May 1975, his periodic physical exam report showed that he no longer required chemotherapy or other tuberculosis treatments. (Admin. R. at 45–46). Hill's doctor opined that his tuberculosis was healed. (*Id.*). The Navy then informed Hill that he would be removed from the TDRL, and could choose either to reenlist or to be honorably discharged. (*Id.* at 286–87, 304–05). Hill elected honorable discharge. (*Id.* at 140–41, 192–94).

## B. Hill's Veteran's Administration Determinations

While he was still on the TDRL, Hill filed a claim for service-connected disabilities with the Veteran's Administration ("VA") in 1973. (*Id.* at 87–88). Hill listed tuberculosis and "sprained ankles/weak ankles" as the bases for his claim. (*Id.*). His initial VA disability rating was 100%, but as Hill's condition improved, the VA eventually reduced his disability rating to 30%. (*Id.* at 159–60). The VA currently rates Hill as 100% disabled. (Exs. to Pl.'s Mem. and Exs.) [Doc. No. 19 at 5].

Some of Hill's Complaint turns on the disparity between the VA's disability rating system and the Navy's PEB disability rating process, so a short explanation of the two systems is worthwhile. Briefly, while both agencies assign percentage ratings to disabled persons, their standards are fundamentally different. The Navy applies a "fitness for duty" standard, which inquiries into whether the servicemember can perform his or her assigned military duties. 10

---

[7] A current definition can be found in the Navy's Military Pers. Manual, ¶ 1850-030(1), (Jan. 17, 2008) *available at* http://www.public.navy.mil/bupers-npc/reference/milpersman /Pages/default.aspx. The definitions are substantially identical.

U.S.C. § 1201(a).  In contrast, the VA's "service-connection" standard is essentially an inquiry into whether the injury, disability, or illness was connected to or aggravated by the claimant's military service.  38 U.S.C. § 1131.  Thus it is possible to be discharged from the military without a medical retirement, but still receive a disability rating from the VA for medical problems incurred while on active duty.

### C.    Procedural History

#### 1.    The Purpose of the BCNR

Congress created the BCNR in 1946, to provide a standardized method for "correction of errors or removal of injustices from current and former Navy and Marine Corps members' records without the necessity for private legislation."  *Background*, Bd. for Corr. of Naval Rs., http://www.public.navy.mil/bupers-npc/career/recordsmanagement/Pages/BCNR.aspx          (last visited Nov. 18, 2013).  The statutory authority for the BCNR is codified in 10 U.S.C. § 1552; the applicable federal regulations are found at 32 C.F.R. § 723 (1997).[8]

The Secretary of the Navy (or other military department) "*may* correct any military record of the Secretary's department *when the Secretary considers it necessary* to correct an error or remove any injustice . . . such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department."   10 U.S.C. § 1552(a)(1) (emphasis added).  Current and former members of the Navy and Marine Corps can apply to the BCNR after exhausting "all available administrative remedies."  32 C.F.R. § 723.3(c)(4).

The BCNR consists of the three members, who "consider applications properly before it for the purpose of determining the existence of error or injustice."  32 C.F.R. § 723.2(a).  When

---

[8]    The Department of the Navy's BCNR procedures are found in Sec'y. of Navy Instruction 5420.193, Board for Correction of Naval Records (Nov. 19, 1997).

the BCNR considers it appropriate, it may hold a hearing, at which the applicant may appear in person, either *pro se* or with counsel. 32 C.F.R. § 723.4(a). The BCNR is authorized to take final action in most cases, although the Secretary of the Navy can withhold authority. *See* 32 C.F.R. § 723.2. A BCNR decision is considered an administrative decision, and is subject to review in federal court. *Chappell v. Wallace*, 462 U.S. 296, 303 (1983) ("Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious or not based on substantial evidence.") (citations omitted).

### 2.    Requests for Reconsideration

An applicant who believes the BCNR decided his or her petition incorrectly may apply for reconsideration:

> After final adjudication, further consideration will be granted only upon presentation by the applicant of new and material evidence or other matter not previously considered by the Board. New evidence is defined as evidence not previously considered by the Board and not reasonably available to the applicant at the time of the previous application. Evidence is material if it is likely to have a substantial effect on the outcome. All requests for further consideration will be initially screened by the Executive Director of the Board to determine whether new and material evidence or other matter (including, but not limited to, any factual allegations or arguments why the relief should be granted) has been submitted by the applicant. If such evidence or other matter has been submitted, the request shall be forwarded to the Board for a decision. If no such evidence or other matter has been submitted, the applicant will be informed that his/her request was not considered by the Board because it did not contain new and material evidence or other matter.

32 C.F.R. 723.9 (emphasis added). The regulation does not specify a limit on how many times an applicant may apply to the BCNR for reconsideration.

### 3. Hill's Application to the BCNR

Hill first applied to the BCNR in 1989 requesting the BCNR to consider whether a permanent disability rendered him unfit for duty at the time of his discharge.[9] (Admin. R. at 194–298). In Hill's request, he stated that the St. Albans Naval Hospital "failed to correctly diagnose" several medical conditions, and if the Navy had known of those conditions, Hill would have been permanently medically retired rather than placed on the TDRL. (Admin. R. at 195–298). Hill submitted medical documents and statements from friends to substantiate his petition to the BCNR. *See* (*id.*).

The BCNR assigned his application to its Physical Disability Section, and it received an advisory opinion from the Physical Evaluation Board (PEB). (Admin. R. at 189). The advisory opinion recommended denial, stating that:

> The medical records indicate that the only unfitting condition suffered by [Hill] in 1973 at the time of [Hill's] placement on the TDRL was active pulmonary tuberculosis with pleural effusion. After more than two years of anti-tuberculosis chemotherapy, [Hill's] chronic respiratory condition was considered inactive, stable, and not unfitting for return to duty. The clinical impression was supported by laboratory studies indicating the absence of tubercle bacilli on culture and healed stable lung lesions. The member claims that, at various times during active service and while on the TDRL, he experienced difficulties with the ankles, knees, recurrent tonsillitis, bowel symptoms, as well as chest symptoms. To some extent, some documentation of these medical problems is a matter of record. At no time while on active duty or while on the TDRL, however, were residual impairments from [Hill's other] conditions *significant enough to be considered unfitting. Had the member elected to reenlist in 1975, he would have been allowed to do so.*

(*Id.* at 193) (emphasis added).

The BCNR received and considered this recommendation, in conjunction with Hill's request and supporting documents, as well as Hill's Naval record, and the applicable statutes and regulations. (*Id.* at 191). The BCNR concurred with the advisory opinion and denied Hill's request on March 9, 1990. (*Id.*).

---

[9]     Hill has represented himself throughout the administrative and federal court process.

Following the denial, Hill submitted a rebuttal to the BCNR, in which he outlined his objections to the denial and offered more medical documentation. (*Id.* at 150–67). The administrative record in this case does not include documentation of whether the BCNR took any action upon receipt of this rebuttal.

### 4.    Hill's Requests for Reconsideration

Between 1998 and 2010, Hill made five requests for reconsideration. *See* (*id.* at 48–49, 117–19, 129, 131–32, 139, 145). In each request, Hill argued that he should have been permanently medically retired from the Navy, because of his illnesses and injuries. *See* (*id.*). Hill sent his first request in May 1998; the BCNR responded approximately a month later. (*Id.* at 145). W. Dean Pfeiffer ("Pfeiffer"), Executive Director of the BCNR, wrote, "[a]lthough, at least some of the material you have submitted is new, it is not material. In other words, even if this material was presented to the Board, the decision would inevitably be the same." (*Id.*). In August 1998, Hill again submitted a request for reconsideration to the BCNR, to which Pfeiffer responded on October 7, 1998. (*Id.* at 139–41). Once again, Pfeiffer explained that while some of Hill's information was new, it was not material. (*Id.* at 137). Hill requested reconsideration a third time in November 1998. (*Id.* at 131–32). The BCNR denied that request on February 25, 1999, using the same "new" but not "material" explanation it employed its previous responses. (*Id.* at 129).

Hill requested reconsideration a fourth time in August 2003. (*Id.* at 118–19). This time, however, he did not receive a response from the BCNR. Instead, the BCNR filed the request without further action or reply. (*Id.* at 117). After waiting nearly a year, Hill wrote to the BCNR to inquire about the status of his request for reconsideration. (*Id.* at 114). He also wrote to the

Secretary of the Navy, asking that the Secretary make "a decision as soon as possible." (*Id.* at 108). On June 15, 2004, Pfeiffer wrote back to Hill, stating:

> As your request was not accompanied by new material evidence, and in view of your repeated submission of similar requests in the past, your letter was filed without action by the Board. Any further correspondence from you that does not contain new material evidence will be handled in a similar manner.

(*Id.* at 105).

Hill submitted the request for reconsideration at issue in the instant action in January 2010. (*Id.* at 48–49). In connection with this request, Hill submitted what he characterized as "newly found service medical records" from St. Albans Naval Hospital and his VA records. (*Id.* at 48). Hill claimed that these records established chronic throat inflammation with bilateral tonsillar exudate, a history of throat inflammations, liver disease, and an official claim of disability, bilateral ankle problems, orthopedic medical problems, and a history of multiple traumatic orthopedic injuries that were mistakenly omitted from the BCNR's March 1990 decision. (*Id.* at 48–49).

Once again, the BCNR filed Hill's request for reconsideration without responding to him. Over thirteen months later, Minnesota Senator Amy Klobuchar wrote to the BCNR on Hill's behalf, in order to determine the status of his 2010 request for reconsideration. (Letter to Senator Amy Klobuchar, Ex. A, Attached to Compl.) [Doc. No. 1-1 at 1]. Within one week, Pfeiffer responded to Senator Klobuchar's office, explaining that "[i]nasmuch as he has not submitted any new material evidence in support of his request, there is no basis for further consideration of his case at this time." (*Id.*). The record and pleadings in this case do not reflect that the BCNR ever directly responded to Hill.

### 5. Hill's 2010 Request for Reconsideration and the Instant Action

Hill filed his Complaint against the Secretary with the Court in February 2012 seeking the Court to order the Secretary "to give [his] claim for correction of naval records a full reconsideration without prejudice and based on all the available evidence both new and old." (Compl. at 5) (internal citations omitted). In August 2012, the Secretary moved to dismiss or in the alternative for summary judgment, alleging that there were no "disputed issues of genuine and material fact." (Mot. to Dismiss or in the Alternative for Summary Judgment, "Mot. to Dismiss") [Doc. No. 11 at 1].

The Court held a hearing on the Motion to Dismiss on November 16, 2012. (Minute Entry Dated Nov. 16, 2012) [Doc. No. 27]. The Court issued a Report and Recommendation recommending remand to the BCNR, and in December 2012, the Honorable Donovan W. Frank issued an Order for Remand requiring Defendants to impartially review and respond to Hill's 2010 request for reconsideration and to consider all of the evidence that had been submitted by Hill. (Report and Recommendation Dated Dec. 3, 2012) [Doc. No. 28]; (Order for Remand) [Doc. No. 30 at 1]. The Court retained jurisdiction over Hill's case during remand so he could challenge Defendant's decision without filing a new lawsuit. (Order for Remand at 1). Judge Frank ordered Defendants to complete their review of Hill's 2010 request for reconsideration within ninety days of December 18, 2012, and file a copy of the decision with the Court when completed. (*Id.* at 2).

On July 23, 2013, the Secretary filed a motion for summary judgment after the BCNR denied Hill's 2010 request for reconsideration on February 12, 2013.[10] (Mot. for Summary Judgment); (Letter from BCNR Concerning Hill's 2010 Request for Reconsideration Dated Feb.

---

[10] The reasons for the denial of Hill's request laid out in the Letter are summarized below in Section II.D.

12, 2013 ("Feb. 2013 Letter"), Ex. in Supp. of Mot. for Summary J.) [Doc. No. 42]. In response, Hill filed his Motion to Proceed in August 2013 where he asks the Court to allow this case to proceed because issues of fact remain and because he alleges the BCNR's February 2013 decision on his 2010 Request for reconsideration was arbitrary and capricious. (Mot. to Proceed).[11] The Court heard oral argument on November 7, 2013, at which time Hill submitted an exhibit to the Court. (Minute Entry Dated Nov. 7, 2013) [Doc. No. 45]. Hill argued that the Exhibit, which is actually included in the Administrative Record at pages 300 to 301, supports his case because it shows that the Navy made mistakes in his case as it incorrectly listed Hill as not having served in Vietnam and corrected this mistake only at Hill's request. *See* (Admin. R. at 300–01). Because the Secretary's counsel appeared via telephone, the Court provided the Secretary with a copy of Hill's exhibit and allowed a week for the Secretary to respond. (*Id.*). No response to the exhibit was filed, and the Motions were taken under advisement on November 14, 2013. (*Id.*).

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court reviewing a motion for summary judgment views the facts in the light most favorable to the nonmoving party and makes all reasonable inferences in favor of the nonmoving party. *Ludwig v. Anderson*, 54 F.3d 465, 470 (8th Cir. 1995) (citation omitted). A genuine issue is one where the evidence "is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." *Schilf v. Eli Lilly &*

---

[11] Hill's Motion to Proceed is essentially an opposition to the Secretary's Motion for Summary Judgment.

*Co.*, 687 F.3d 947, 949 (8th Cir. 2012) (citation omitted).  A material fact is one that could affect the suit's outcome under the applicable, substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  It is the moving party's burden to show that the material facts are not in dispute.  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (*en banc*).  The nonmoving party must put forth specific evidence creating a genuine issue of material fact and cannot merely make allegations or denials.  Fed. R. Civ. P. 56(c)(1)(A); *Wood v. SatCom Mktg., LLC*, 705 F.3d 823, 828 (8th Cir. 2013) (citation omitted).  The Court's review of the BCNR's denial of Hill's 2010 request for reconsideration focuses exclusively on a legal issue based on the administrative record that is properly before the Court, and accordingly, the matter is ripe for summary judgment.  *Nokes v. U.S. Coast Guard*, 282 F. Supp. 2d 1085, 1087 (D. Minn. 2003) (holding that a final action by the Board for Correction of Military Records denying an individual's eligibility for promotion involves an issue relying exclusively on the administrative record properly before the court and thus ripe for summary adjudication) (citing *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

**B.    Applicable Standard for Court's Review**

In this action, Hill is essentially seeking judicial review of an administrative decision. Traditionally, the Eighth Circuit has reviewed decisions by the BCNR and other military boards of correction under the Administrative Procedures Act (APA), 5 U.S.C. § 701 *et seq*.  *See Chandler v U.S. Air Force*, 255 F.3d 919 (8th Cir. 2001); *Henry v. U.S. Dep't of the Navy*, 77 F.3d 271 (8th Cir. 1996).  The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness."  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (citation omitted).  It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are found to be "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This is a "narrow" standard of review requiring courts to defer to the agency's expertise. *Motor Vehicle Mfrs. Ass'n of U.S. Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). An agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id*. (internal quotations omitted). "As long as the agency provides a rational explanation for its decision, a reviewing court cannot disturb it." *Henry*, 77 F.3d at 272 (citing *Nat'l Wildlife Federation v. Whistler*, 27 F.3d 1341, 1344 (8th Cir. 1994)). "If the agency action is rationally related to the facts in the record, the court may not substitute its judgment for that of the agency merely because it would have decided the matter differently." *Nokes*, 282 F. Supp. 2d at 1088 (citing *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1031 (8th Cir. 2003)).

Administrative law requires that an agency's decision set forth its reasons for decision, and failure to do so render the agency's decision arbitrary and capricious. *Remmie v. Mabus*, 898 F. Supp. 2d 108, 119 (D.D.C. 2012) (*Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 737 (D.C. Cir. 2001)). Title 5 U.S.C. § 555(e), accordingly, requires:

> Prompt notice shall be given of the denial in whole or in part of a written application, petition, or other request of an interested person made in connection with any agency proceeding. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief statement of the grounds for denial.

5 U.S.C.A. § 555; *see also Remmie*, 898 F. Supp. 2d at 109 (applying § 555(e)'s requirements to a BCNR denial of a request for reconsideration).

Nowhere have courts demonstrated more deference to executive agencies than in the realm of military affairs. "[The] deference, owed to administrative actions in general, is perhaps at its zenith when military matters are involved." *Chandler*, 320 F.3d at 830. A court's review

of a military agency's decision "must be extremely deferential because of the confluence of the narrow scope of review under the APA and the military setting." *Henry*, 77 F.3d 271, 272 (8th Cir. 1996).

The extreme deference shown to the military agencies does not mean that the BCNR's decisions cannot be reviewed by federal courts, but rather that "only the most egregious decisions may be prevented under such a deferential standard of review." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1515 (D.C. Cir. 1989). The reviewing court "must be satisfied that the agency not only employed procedures which conform to the procedural requirements of [the APA] but which also conform to the agency's own internal procedures." *Oglala Sioux Tribe of Indians v. Andrus*, 603 F.2d 707, 713 (8th Cir. 1979) (internal citations omitted) (citing *Morton v. Ruiz*, 415 U.S. 199 (1974)).

To survive the Secretary's Motion for Summary Judgment under the applicable arbitrary and capricious standard, Hill must show that the BCNR's decision either did not consider relevant facts of the case or rendered a decision that was not rationally related to the facts. *Nokes*, 282 F. Supp. 2d at 1088.

## C.     Statute of Limitations

The BCNR is subject to the standard six-year statute of limitations applicable to most federal agency decisions. 28 U.S.C. § 2401; *see also Izaak Walton League of America, Inc. v. Kimbell*, 558 F.3d 751, 758 (8th Cir. 2009). Given the long history of Hill's interactions with the BCNR, there are many portions of the Administrative Record that this Court cannot review, because the statute of limitations has long since passed. Review of Hill's original petition and his first four requests for reconsideration is statutorily barred pursuant to 28 U.S.C. § 2401. The

2010 request for reconsideration, however, is well within the six-year period set forth in 28 U.S.C. § 2401.

### D.    BCNR's Denial of Hill's 2010 Request for Reconsideration

In support of its Motion for Summary Judgment, the Secretary argues that the BCNR reasonably denied Hill's 2010 request for reconsideration after finding the evidence Hill submitted failed to meet the burden of both showing the evidence was unavailable in 1975 and was sufficient to change the outcome of the 1989 review.  (Secretary's Mem. in Supp. of Mot. for Summary Judgment "Secretary's Mem. in Supp.") [Doc. No. 37 at 3].  Hill, on the other hand, contends that the BCNR's denial was arbitrary and capricious in violation of the Administrative Procedures Act.  (Hill's Mem. in Supp.) [Doc. No. 40 at 2–3].

### 1.    Adequacy of the Denial

The BCNR denied Hill's 2010 request for reconsideration and explained its reasoning in a Letter to Hill dated February 12, 2013.  (Letter Dated Feb. 12, 2013).  The Letter explained that a three-member panel of the BCNR reviewed Hill's 2010 request for reconsideration and determined that the request "was not accompanied by new material evidence or other matter[.]" (*Id.*).  The BCNR, therefore, stated that there was no basis for any further consideration of Hill's request.  (*Id.*).  The BCNR went on to explain that Hill's submitted materials were not new because he "could have made substantially the same contentions in 1989." (*id.*).  With respect to the service medical and disability evaluation records, the BCNR stated they were reviewed by the Board when it considered Hill's case in 1990 and Hill could have reviewed the records in the BCNR's offices.  (*Id.*).  The BCNR also discounted the statements of two physicians as not new because Hill could have obtained a substantially similar opinion from another physician in 1989. (*Id.*).  The BCNR did find the VA records from June 4, 1991 to February 10, 2012 new but not

material because they were not significant enough to change the outcome of Hill's case. (*Id.*). The BCNR noted that the VA records do not suggest that Hill was entitled to the 30% or higher rate of physical disability in 1975 which would have been required for Hill to have been found unfit for duty and permanently retired. (*Id.* at 2).

While the determination of whether Hill's 2010 request presents "new" and "material" information properly belongs to the BCNR, the Court may review the BCNR's procedures for compliance with the APA and the plain language of the Code of Federal Regulations. A court's review of the BCNR is confined to deciding "whether the Board's decisionmaking process was deficient and not whether the decision was correct." *Watson v. Arkansas Nat'l Guard*, 886 F.2d 1004, 1011 n.16 (8th Cir. 1989).

Especially considering the applicable deferential standard of review, the Court finds that the BCNR's February 12, 2013 Letter complied with both the APA and the applicable CFR regulations. The BCNR's Letter complied with 32 C.F.R. 723.9, which requires the that the "the applicant . . . be informed that his/her request was not considered by the Board because it did not contain new and material evidence." 32 C.F.R. § 723.9. Here, the BCNR's Letter informed Hill that the Board determined that his 2010 request did not contain the requisite new and material evidence. In addition, the Letter provided brief explanations as to why the Board reached its decision. The Letter, thus, met the requirements of 20 C.F.R. 723.9.

The BCNR's Letter also complied with the APA in that it provided a rational explanation for its decision. The BCNR's Letter evidences that it completed the review of the facts and circumstances surrounding the denial of Hill's 2010 request for reconsideration of the BCNR's 1989 decision refusing to change Hill's discharge papers to read unfit for duty due to permanent disability instead of honorable discharge. (Letter Dated Feb. 12, 2013). The BCNR's Letter

establishes that it considered the evidence submitted by Hill in support of his request for reconsideration and dismissed each of Hill's submissions as either not meeting the requisite definition of new or not material. *See* (*id.*). In addition, the BCNR's Letter includes references to the 1989 PEB decision showing that the BCNR reviewed the record evidence in rendering its decision.[12]

The Court, thus, finds that the BCNR's denial of Hill's 2010 request for reconsideration was not an arbitrary, capricious, or an unsupported decision. *Compare Nokes*, 282 F. Supp. 2d at 1088 (holding that a twenty-page Board of Correction of Military Records' decision that reviewed all of the facts and circumstances of platiniff's case in reaching its conclusion and cited to the record to support its findings was sufficiently rationally related to the facts of the case and remand was not warranted) with *Jackson*, 919 F. Supp. 2d at 121 (holding the BCNR's explanation that did not address any facts found or a linkage of those facts to the results and merely cited governing regulations failed was arbitrary and capricious) and *Remmie*, 898 F. Supp. 2d at 121 (holding that a BCNR decision that merely cites the governing regulation and does not explain why the Board made its decision that the materials in the petition were not

---

[12] The Secretary makes many arguments as to why the BCNR's decision was proper and adequately supported by the evidence in the record. *See* (Secretary's Mem. in Supp. at 5–7); (Secretary's Reply at 2–3). The Secretary's arguments, however, miss the point because it is not the Court's job to determine the strength of Hill's evidence, but only to make sure that the BCNR's decision making process was adequate. *See Jackson v. Mabus*, 919 F. Supp. 2d 117, 121 (D.D.C. 2013) ("The Secretary counters that the Board's decision to reject Jackson's request for reconsideration is amply supported in the record. . . . the Secretary's argument misses the point. This Court is not tasked with determining the strength of Jackson's evidence, only with gauging the adequacy of the Board's decision making process."); *see also Remmie v. Mabus*, 898 F. Supp. 2d 108, 120 (D.D.C. 2012) ("While the Secretary's *briefs* in this case explain in some detail how the Board purportedly reached its conclusion, 'courts may not accept appellate counsel's *post hoc* rationalizations for agency action.'") (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

sufficiently new and material so as to warrant a reconsideration fails § 555(e)'s requirements and must be remanded).

### 2. Hill's Arguments

Because the record shows that the BCNR's denial of Hill's 2010 request for reconsideration complied with both the relevant CFR sections and the Administrative Procedure Act, summary judgment in the Secretary's favor is warranted unless Hill can provide probative evidence establishing that the BCNR's decision was actually arbitrary and capricious. *See Nokes*, 282 F. Supp. 2d at 1088; *see also See Henry v. U.S. Dep't of Navy*, 77 F.3d 271, 274 (8th Cir. 1996) (holding that when a decision of the BCNR does not appear to have been deficient it must be affirmed). The crux of Hill's arguments is that the 1989 BCNR decision did not have access to his complete medical records and accordingly was arbitrary and capricious as it was not based on all of the medical evidence. (Hill's Mem. in Supp. at 2–3). As a result, Hill argues that many severe medical conditions were not considered by the 1989 Board including restrictive and obstructive lung disease, Hepatitis C, liver conditions, and chronic pharyngitis, which would have changed the Board's decision when combined with the 30% physical disability rating for tuberculosis.[13] (*Id.* at 1, 2). Hill argues that all of these conditions were present while he was in the Navy and he contends that he should have been given a disability rating for these conditions. (*Id.* at 4–5).

Hill argues that the 1989 BCNR did not have access to his medical records from St. Albans Hospital and any assertion to the contrary by the BCNR is only an assumption. (*Id.* at 2–3). To show the 1989 BCNR did not have access to the St. Albans records, Hill argues that he

---

[13] Many of Hill's arguments focus on the lack of information before the 1989 Board, however, the BCNR's 1989 denial of Hill's request for reconsideration is not reviewable by this Court as the statute of limitations has passed. 28 U.S.C. § 2401. The Court, thus, can only review Hill's 2010 Request for Reconsideration.

cited the St. Albans records in his 1989 request but that the BCNR did not respond to his statements and if the BCNR had the records it would have documented the medical conditions listed in those records including a liver condition. (*Id.* at 2–3, 4–6).[14]

Despite his many arguments, Hill has not offered any probative evidence establishing that the BCNR's denial of his request for reconsideration was arbitrary or capricious, an abuse of discretion, or not in accordance with the law. Many of Hill's arguments ask the Court to substitute its judgment for that of the BCNR to find that the evidence Hill submitted with his 2010 request for reconsideration warranted a reconsideration, however, the Court's limited review does not allow it to make such decisions. *See Nokes*, 282 F. Supp. 2d at 1088 (citation omitted). In addition, the Court finds Hill's 2010 request for reconsideration received an adequate review by the BCNR and a decision that is rationally related to the facts of the case. The Court, therefore, finds summary judgment in the Secretary's favor appropriate.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. The Secretary's for Summary Judgment [Doc. No. 36] be **GRANTED**;

2. Hill's Motion to Allow Lawsuit to Proceed and Defendant's Motion Be Denied [Doc. No. 39] be **DENIED**; and

3. This action be dismissed.

---

[14] The Court does not address Hill's contention that if the BCNR had the St. Albans Hospital files in their records they would have responded to Hill's Freedom of Information Act Request and provide those records to him, because the disposition of this contention does not impact the Court's decision on the pending Motions. (Hill's Mem. in Supp. at 3). In addition, the Court does not address Hill's contention that he only had one physical examination in the Navy and that the doctor was only interested in Hill's tuberculosis at the examination for the same reason. (*Id.* at 2).

Dated: November 18, 2013

_s/ Steven E. Rau_
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **December 2, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.